# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KASPER BRANSKI, et al.,

     Plaintiffs,

  v.           Case No. 24-CV-360

MARY ELIZABETH BRENNAN SENG, et al.,

     Defendants.

# DECISION AND ORDER

### 1. Background

"Aliens with extraordinary ability" may obtain admission to the United States if

(i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

(ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

(iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A). "Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). Aside from a major one-time achievement like a

Nobel Prize, *see Kazarian v. US Citizenship & Immigration Servs.*, 596 F.3d 1115, 1119 (9th Cir. 2010) (citing H.R. Rep. No. 101-723(I & II) (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739), an alien may demonstrate extraordinary ability by presenting evidence of at least three of the following:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3).

If a petitioner has submitted the requisite evidence, USCIS determines whether the evidence demonstrates both a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor," 8 C.F.R. § 204.5(h)(2), and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3).

*Kazarian*, 596 F.3d at 1119-20; *see also Amin v. Mayorkas*, 24 F.4th 383, 395 (5th Cir. 2022) (noting that satisfying the regulatory criteria is only the first of two steps). If simply meeting three out of ten criteria was "enough to automatically show that acclaim, then the 'extraordinary ability' visa will look less like an Einstein visa and more like a Lake Wobegon one." *Amin*, 24 F.4th at 395.

The extraordinary ability classification is "extremely restrictive." *Kazarian*, 596 F.3d at 1120 (citing *Lee v. Ziglar*, 237 F. Supp.2d 914, 918 (N.D. Ill.2002) (finding that 'arguably one of the most famous baseball players in Korean history' did not qualify for the visa as a baseball coach for the Chicago White Sox because his acclaim was limited to his skills as a player and not as a coach)); In re Price , 20 I. & N. Dec. 953, 954, 1994 BIA LEXIS 23, *4 (holding that professional athletes in the premier league of their sport do not necessarily demonstrate "extraordinary ability"). "Over the years, these

preferences have enabled Nobel laureates, world class athletes, and renowned artists and musicians to live and work in the United States." *Amin*, 24 F.4th at 386.

Kasper Branski filed an I-140 petition for an EB-1A immigrant visa on the basis that his skills as a coach builder—building and restoring motorcycles and other vehicles—constitute an extraordinary ability. (R. 157-64.) He argued that he satisfies subsections (i), (iii), (iv), (vii), (viii), (ix), and (x) of section 204.5(h)(3). (*See* R. 3-7, 24-34.) His wife, Charlotte Evelyn Svensson, joins him in this action, having filed a dependent I-485 application based on his petition.[1] (ECF No. 1, ¶ 16.)

United States Citizenship and Immigration Services (USCIS) Texas Service Center found that Branski satisfied subsections (iv) and (v) of 8 C.F.R. § 204.5(h)(3), but that he was ineligible for an EB-1A visa because he did not satisfy any other criteria. (R. 2-7.) Branski did not appeal to the USCIS's Administrative Appeals Office (AAO),[2] and instead filed the present action.

---

[1] Because Svensson's claim is tangential to the issues before the court, the court will refer to Branski alone and use the singular with respect to the plaintiffs.

[2] The APA authorizes a court to review only "final" agency actions. 5 U.S.C. § 704. An agency decision is not final if the agency by statute or rule requires an administrative appeal. If an administrative appeal is optional, a party is not required to employ that step before seeking relief under the APA. *See Darby v. Cisneros*, 509 U.S. 137, 146, 113 S. Ct. 2539, 2544, 125 L.Ed.2d 113, 123 (1993). There is no statute or regulation requiring a petitioner to seek review by the AAO following USCIS's denial of an I-140 petition, and therefore a petitioner is not required to appeal to the AAO before seeking relief under the APA. *Amin*, 24 F.4th at 390; *but see ASP, Inc. v. Holder*, No. 5:12-CV-50-BO, 2012 U.S. Dist. LEXIS 188426, at *5 (E.D.N.C. Dec. 10, 2012) (holding that plaintiff was required to pursue appeal to AAO before challenging denial of I-140 petition under the APA). The defendants do not argue that the prudential exhaustion doctrine, *see Darby v. Cisneros*, 509 U.S. 137, 146, 113 S. Ct. 2539, 2544, 125 L.Ed.2d 113, 123 (1993), should bar this action.

As summarized in USCIS's decision, Branski pointed to three awards he received for his "Tequila" motorcycle as evidence of the subsection (i) criterion: Best in Class at the Central Florida Wheels of Steel Show; Best in Class at the 24th Anniversary Cycle Source Magazine Broken Spoke Custom Bike Show; and 3rd in Class at the Rat's Hole Bike Show. (R. 3.) USCIS concluded that letters from the owners of Cycle Source and from Rat's Hole Custom Bike Shows, Inc. stating that Branski won the respective awards "are not objective, documentary forms of evidence which demonstrate that the petitioner was the actual recipient of the awards." (R. 3.) USCIS rejected as insufficient counsel's representation that such awards are not traditionally accompanied by press releases or official announcements. (R. 3.) Further, USCIS found that Branski failed to present "any objective, documentary evidence which demonstrates that his awards are nationally or internationally recognized for excellence in the field." (R. 3.)

Branski attempted to satisfy the sub. (iii) criterion by pointing to articles published in: "*Gasoline* magazine; Fuel Tank's blog; *Big Twin* magazine; *Ferro* magazine's blog; *Cycle Source* magazine; and *Classic Easyriders* magazine." (R. 4.) Branski submitted a letter stating that *Gasoline* and *Big Twin* are the magazines for those in the hot rod and custom motorcycle business in Sweden. (R. 4.) Branski's attorney stated that further information, such as circulation numbers, are not generally available for Swedish publications. (R. 4.)

USCIS categorically rejected blogs as social media posts. (R. 4.) Moreover, one was a piece of self-promotion written by Branski and another did not include the author as required. (R. 4.) *Classic Easyriders* offered merely a photo of Branski and his custom motorcycle; it did not contain an article regarding his work. (R. 4.) Although Branski also submitted a letter "attesting to the recognition of Cycle Source magazine, and submitted an article, an information page, and its Instagram page which mention it," USCIS found that he "did not submit any objective, documentary evidence which demonstrates that this magazine or any of the other publications qualify as professional or major trade publications or other major media." (R. 5.)

Branski alleged that he has performed in a leading or critical role for organizations or establishments that have a distinguished reputation and thus he satisfies sub. (viii) with his work for SaltWorks Fab LLC, Hammer Studios, and Leiter Motor Company. (R. 5.) He pointed to letters from persons in these organizations discussing his work. His attorney asserted that, because "all of these entities provided coach building and automobile metal restoration services[,] … [the petitioner's] role restoring and creating coach built vehicles at these distinguished companies was clearly of significant importance to the outcome of each organization's activities." (R. 5.) USCIS rejected this argument, stating that "simply performing one's job duties is not evidence of a leading or critical role." (R. 5.)

6

Branski submitted a letter from the Owner and President of SaltWorks Fab which stated that Branski taught apprentices and junior employees and that Branski is critical because, without him, it would not be able to take on recognized clients. (R. 5.) USCIS found that Branski "did not submit any objective. documentary evidence which demonstrates how his performance in his role compared with others at Salt Works Fab, or that his contributions were of significant importance to the outcome of the organization." (R. 6.) USCIS refused to consider an article regarding SaltWorks Fab's reputation and Branski's wok because it was dated after Branski filed his petition. (R. 5.) Further, USCIS further found that the letters Branski submitted regarding his work with Hammer Studios and Leiter Motor Company failed to show that "his roles were leading or critical, and that the organizations have distinguished reputations." (R. 6.)

As for evidence that Branski was paid a high salary or other significantly high remuneration in comparison to other others in the field so as to satisfy sub. (ix), USCIS noted that the rule distinguishes between salary and other remuneration. (R. 6.) Salary must be "high" whereas remuneration must the "significantly high." (R. 6.) The $114,000 per year that Branski earned at SaltWorks Fab included salary and overtime, which must be considered separately. (R. 6.) His salary was around $87,000. USCIS concluded that Branski failed to submit sufficient appropriate evidence regarding what is a high salary in his field. (R. 7.)

Because it found that Branski failed to satisfy at least three of the ten criteria in 8 C.F.R. § 240.5(h)(3), USCIS did "not conduct a final merits determination to determine whether [Branski] has reached a level of expertise indicating that [he] is one of that small percentage who have risen to the top of the field of endeavor, and whether [he] has sustained acclaim." (R. 7.)

Branski seeks summary judgment. In support, he submitted a brief that failed to comply with the court's Local Rules. *See* Gen. L.R. 5(a)(5); Civ. L.R. 56(b)(8). Ordinarily, the court would strike any non-compliant filing. *See* Gen. L.R. 83(f); Civ. L.R. 56(b)(9). The court will not do so here in light of the fact that this appears to be the first time that either of Branski's attorneys has litigated a motion for summary judgment in this district. But the court reminds counsel of the need to fully comply with the court's Local Rules.

The defendants seek summary judgment in their favor. (ECF No. 18 at 10.)

The court has jurisdiction under 5 U.S.C. § 702 and 28 U.S.C. § 1331. All parties have consented under 28 U.S.C. § 636(c). (ECF No. 7, 8.)

## 2. Applicable Law

In visa petition proceedings, "[t]he petitioner bears the burden of establishing eligibility for the benefit sought by a preponderance of the evidence." *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024) (citing 8 U.S.C. § 1361; *Matter of Brantigan*, 11 I. & N. Dec. 493, 493 (B.I.A. 1966)).

Visa denials are subject to court review under the Administrative Procedures Act (APA). *See Smith*, 103 F.4th at 1252. The APA permits a court to set aside an agency decision only if the court finds the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Gripum, LLC v. United States FDA*, 47 F.4th 553, 558 (7th Cir. 2022). This "standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)

> "Agency action is arbitrary and capricious if the agency:
>
> [R]elied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Smith*, 103 F.4th at 1252 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)). "Said another way, the arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster." *Id*. A court is not permitted to substitute its judgment for that of the agency. *Prometheus Radio Project*, 592 U.S. at 423. Nor may the court reweigh the evidence. *Smith*, 103 F.4th at 1253. Rather, the court's review is deferential and ensures simply "that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 592 U.S. 414, 423. The

court must be also mindful that "[e]xtraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call." *Amin*, 24 F.4th at 394-95.

3. **Analysis**

   **3.1.    8 C.F.R. § 204.5(h)(3)(iii) – Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought**

Branski argues that USCIS "invented new thresholds for the consideration of evidence" when it found a published photograph of Branski and his motorcycle insufficient under this criterion. (ECF No. 17 at 18.) He argues that USCIS mischaracterized what he said about the availability of circulation data for Swedish magazines and "completely ignores the fact that an expert opinion letter supplies the information that it seems to expect to be contained within the *Gasoline* magazine article." (ECF No. 17 at 18-19.)

Specifically, Branski challenges USCIS's finding that he "did not submit any objective, documentary evidence which demonstrates that [*Cycle Source*] or any of the other publications qualify as professional or major trade publications or other major media." (ECF No. 17 at 19.) He asserts that a letter from Håkan Johansson is an "expert opinion" establishing the reputation of *Gasoline* and *Big Twin*. (ECF No. 17 at 19.) He also points to "an expert opinion letter from Rick Bray" regarding the status of Cycle Source. (ECF No. 17 at 19.) He also provided a Media Kit from *Cycle Source* regarding its

print and digital distribution (ECF No. 17 at 19) and an "article" about *Gasoline*. (ECF No. 17 at 19.) He argues that, given these "discrepancies," "it can only be concluded that defendant USCIS did not properly consider the evidence in its possession." (ECF No. 17 at 20.)

As the defendants note, "it is unclear whether Plaintiffs are contending that these magazines constitutes [sic] 'professional … publications,' 'major trade publications,' or other 'major media.'" (ECF No. 18 at 23.) This lack of clarity has hampered the court's analysis as it undoubtedly affected the USCIS's review.

The *Classic Easyriders* photographs (R. 434-42) cannot be fairly characterized as being "about" Branski. The article was about the Choppertown Live event in Sarasota, Florida. As may be expected for a magazine spread about an event, the magazine included many photographs. That Branski and his motorcycle were depicted in two of the 23 photographs of the event appears to have been happenstance. Branski is not identified by name in the article or even in any caption to a photograph; the court has to rely on Post-it notes and arrows added to the record to recognize which photographs depict him. The magazine says nothing of Branski's role as a coachbuilder or suggests that he built the motorcycle he is photographed near; he could just as well have been a spectator at the event who happened to be photographed.

USCIS rejected opinions regarding the significance of the publications, noting that the opinions were not "objective." (R. 4.) While it is accurate that an opinion is not

"objective" evidence, to reject this evidence because it is not "objective" is to reject it merely because it is an opinion. The court can envision many instances where an expert's opinion may be strong or perhaps even the best evidence of the import of a purported "professional or major trade publication."[3] USCIS did not explain why in its proceedings it is improper to consider opinion evidence. Nothing in 8 C.F.R. § 204.5 suggests that an alien's evidence must be "objective." The regulation refers merely to "evidence." "[N]either USCIS nor an AAO may unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5." *Kazarian*, 596 F.3d at 1121 (citing *Love Korean Church v. Chertoff*, 549 F.3d 749, 758 (9th Cir. 2008)).

USCIS's decision is devoid of any other explanation as to why it did not credit the opinions regarding the significance of the relevant publications. Although there are plausible reasons to find the purported experts' opinions unpersuasive, the court "may not supply a reasoned basis for the agency's action that the agency itself has not given …." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

---

[3] While certain publications are easily recognizable as "major media," applications for EB-1A visas often arise in esoteric fields, *see Braga v. Poulos*, No. CV 06-5105 SJO(FMOx), 2007 U.S. Dist. LEXIS 103556, at *15 (C.D. Cal. July 6, 2007) (Brazilian jiu-jitsu); *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 545 (S.D.N.Y. 2012) (table tennis); *Svetlana Visinscaia v. Rand Beers*, 4 F. Supp. 3d 126, 128 (D.D.C. 2013) (ballroom dancing); *Eguchi v. Kelly*, Civil Action No. 3:16-CV-1286-D, 2017 U.S. Dist. LEXIS 104974, at *10 (N.D. Tex. June 23, 2017) (bull riding); *Mussarova v. Garland*, 562 F. Supp. 3d 837, 844 (C.D. Cal. 2022) (water polo); *Javakhadze v. Mayorkas*, Civil Action No. 3:21-CV-00617-E, 2023 U.S. Dist. LEXIS 207286, at *1 (N.D. Tex. Nov. 20, 2023) (chess), in which adjudicators may struggle to distinguish a minor from a "major trade publication."

USCIS also made no mention of the publications' circulation numbers. USCIS's Policy Manual states: "In evaluating whether a submitted publication is a professional publication, major trade publication, or major media, relevant factors include the intended audience (for professional and major trade publications) and the relative circulation, readership, or viewership (for major trade publications and other major media)." USCIS, Policy Manual, Vol. 6, Part F, Ch. 2. Sec. B. 1., available at https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2; *cf. Zizi v. Cuccinelli*, No. 20-cv-07856-SVK, 2021 U.S. Dist. LEXIS 126610, at *16 (N.D. Cal. June 24, 2021) (noting that USCIS found that petitioner did not satisfy § 204.5(h)(3)(iii) because he did not submit circulation numbers); *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 545 (S.D.N.Y. 2012) (finding that the agency properly found that the petitioner failed to satisfy § 204.5(h)(3)(iii) because he failed to submit circulation numbers for the publications).

Branski submitted evidence that *Gasoline* had a circulation of between 20,000 and 27,000 (R. 393), *Big Twin* a circulation of 9,000 (R. 417) and *Cycle Source* had over 350,000 monthly subscribers (R. 58). Again, there may be reasons to conclude that these figures fail to demonstrate that some or all of these publications are "professional or major trade publications or other major media." For example, Branski fails to offer any context for these figures, thus making it difficult to assess their significance. *Cf. Zizi*, 2021 U.S. Dist. LEXIS 126610, at *19 (noting that the significance of a trade publication's circulation depends on the size of the field; a publication read by everyone in a field will

still have a small circulation if the field is small). The circulation data are also derived from sources of uncertain reliability.

But USCIS did not provide a reason for failing to consider the publications' circulation numbers, and, again, the court cannot rely on a rationale the agency never articulated. *Bowman Transp.*, 419 U.S. at 285-86. USCIS's explanation, insofar as there was one—that "the petitioner did not submit any objective, documentary evidence which demonstrates that this magazine or any of the other publications qualify as professional or major trade publications or other major media" (R. 5)—is conclusory and unhelpful in terms of understanding the rationale for the agency's decision. Unlike the opinions, circulation data *is* objective evidence.

The court is left with only USCIS's conclusion that the evidence did not demonstrate that the publications were "professional or major trade publications or other major media." But this amounts to nothing more than ipse dixit that the publications do not satisfy 8 C.F.R. § 204.5(h)(3)(iii). It appears USCIS may have simply ignored the circulation evidence. While USCIS need only consider, rather than explicitly mention, all of the evidence, *Smith*, 103 F.4th at 1253, the absence of any allusion to the circulation data leaves the court unable "to perceive that it has heard and thought and not merely reacted," *Vergara-Molina v. INS*, 956 F.2d 682, 685 (7th Cir. 1992).

Therefore, remand is necessary for USCIS to reassess whether Branski satisfies 8 C.F.R. § 204.5(h)(3)(iii).

### 3.2. 8 C.F.R. § 204.5(h)(3)(viii) – Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation

There are two prongs to this criterion—(1) the alien performed a "leading or critical role"; and (2) he performed that role for an organization or establishment that has a "distinguished reputation." 8 C.F.R. § 205.5(h)(2)(viii). A failure to satisfy either prong is sufficient to find that the petitioner does not meet this criterion. *See* USCIS, Policy Manual, Vol. 6, Part F, Ch. 2. Sec. B. 1. Criterion 8, available at https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2.

USCIS noted that Branski submitted a letter from the owner and president of SaltWorks, which stated that Branski is the company's lead coachbuilder and that he trains other employees. (R. 5.) The letter stated that Branski's role is critical and that, without him, SaltWorks would not be able to take on certain projects, including one worth over $300,000 and another of up to $500,000. (R. 5.) Branski also submitted an article about SaltWorks and the work he performed for it. (R. 6.)

USCIS concluded that "simply performing one's job duties is not evidence of a leading or critical role." (R. 5.) With respect to Branski's alleged role training other employees, it said "no documentary evidence was submitted." (R. 5.) And because it was published after Branski filed his application, USCIS rejected the article that he submitted about SaltWorks in an effort to establish that it has a distinguished reputation. (R. 6.) Finally, USCIS found insufficient the letters of recommendation that

discuss Branski's roles at other employers because they were not supported by "any objective, documentary evidence." (R. 6.)

USCIS's statement that Branski did not submit "documentary evidence" that he trained other employees (R. 5.) is curious in light of the fact that this statement came right after noting that Branski submitted a letter from the owner of SaltWorks stating that Branski trained employees (R. 5). The court is left to wonder what a letter is if not "documentary evidence." Perhaps "documentary" was merely an ill-chosen word and USCIS meant something along the lines of "corroborative." But the court need not belabor this matter because whether Branski trained other employees appears to be of, at best, marginal relevance to the question of whether he had a leading or critical role at SaltWorks. It is not, for example, a factor identified in the regulation or the Policy Manual.

More significant in USCIS's analysis was its conclusion that Branski failed to submit evidence that demonstrated how his role compared with others at the organizations. (R. 5-6.) Again, USCIS noted the absence of "objective. documentary evidence," but this time it is easy to understand what it found lacking. Branski submitted letters from his employers attesting to his crucial role, but nothing corroborated these assertions. USCIS reasonably concluded that, as to the ultimate question, it cannot simply take an employer's word for it that Branski's role was leading

or critical. Rather, it was Branski's obligation to submit evidence (which includes letters from persons with personal knowledge) to allow it to reach this conclusion.

Contrary to Branski's contention (*see, e.g.*, ECF No. 19 at 13-14), USCIS did not simply dismiss the letters because they were letters. That would have been improper. USCIS's Policy Manual states, "This is one criterion where letters from persons with personal knowledge of the significance of the person's leading or critical role can be particularly helpful to officers in making this determination …." USCIS, Policy Manual, Vol. 6, Part F, Ch. 2. Sec. B. 1. Criterion 8, available at https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2. But letters are sufficient only if they provide the required information. The portion of the Manual quoted above continues, "…so long as the letters contain detailed and probative information that specifically addresses how the person's role for the organization, establishment, division, or department was leading or critical." USCIS, Policy Manual, Vol. 6, Part F, Ch. 2. Sec. B. 1. Criterion 8, available at https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2.

USCIS found that the letters did not provide the requisite detailed and probative information. The letters did not include, for example, evidence of what other employees did. Thus, when the owner of SaltWorks discussed Branski's work on a 1968 Mustang Fastback for a former NFL player, or his upcoming 1955 Desoto project, he did not offer details such as what portion of the work Branski performed on these projects in relation

17

to other employees or how the revenue from those projects compared to SaltWorks's overall revenue.

USCIS also found that Branski failed to satisfy the second prong of this criterion. (R. 5-6.) Whether an organization has a "distinguished reputation" inheres a range of discretion. *Cf.* USCIS, Policy Manual, Vol. 6, Part F, Ch. 2. Sec. B. 1. Criterion 8, available at https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (noting "Merriam-Webster's online dictionary defines 'distinguished' as 'marked by eminence, distinction, or excellence' or 'befitting an eminent person.'")

Branski highlights letters from customers and other shops attesting to the quality of work done by the shops that employed him. (ECF No. 17 at 20-22.) But his argument amounts to nothing more than a request for the court to reweigh the evidence and reach a different conclusion. Successful businesses can be expected to have satisfied customers and the positive esteem of peers. But it takes more to have a "distinguished reputation." USCIS reasonably found that Branski's evidence did not demonstrate that any of the organizations had a distinguished reputation, and thus it reasonably concluded that Branski did not satisfy the 8 C.F.R. § 204.5(h)(3)(viii) criterion.

### 3.3. 8 C.F.R. § 204.5(h)(2)(ix) – Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field

Branski earned $114,000 per year working at SaltWorks. (R. 6.) However, the regulation distinguishes between "salary" and "other significantly high remuneration."

(R. 6.) Branski's salary was up to $42 per hour, which worked out to $87,360 per year. (R. 6.) The remainder of his compensation was overtime, which is considered separately. (R. 6.) Then the question is who is an appropriate comparator. Branski submitted a letter from Alien Prevailing Wage Determination, Inc., that compared his salary to that of "industrial designers, automotive designers, and car body designers." (R. 6.)

USCIS found that the descriptions of these jobs were not comparable to Branski's job duties because industrial designers "include designing an array of products such as home appliances, furniture, electronics and toys in manufacturing factories" and "[a]utomotive and car body designer job duties are more conceptual and are not 'hands on' like the petitioner's occupation." (R. 7.) It thus concluded that Branski failed to sustain his burden with respect to this criterion. (R. 6-7.)

The court finds no error in this aspect of USCIS's decision. The articulated distinctions between the jobs identified in the letter and that of coachbuilder provided a reasonable basis for finding the evidence insufficient.

USCIS also stated:

The petitioner submitted average salary estimates of related positions including a report stating that the top annual salaries of automotive fabricators is as high as $98,000, but the petitioner did not submit evidence of high salaries for other coachbuilders. Although the petitioner states that there is no OES category for coachbuilders [or] other comparable positions, the burden is on the petitioner to demonstrate that he has commanded a high salary or other significantly high remuneration for his services in the field. The petitioner was requested to submit additional evidence which satisfies the plain language of this criterion.

(R. 6.)

It is unclear what evidence USCIS is referring to in its reference to evidence regarding automotive fabricators and why USCIS apparently discounted such evidence. It appears that USCIS was referring to information from ZipRecruiter stating that the national average salary for "custom car builder" was $44,340 (R. 531) and for "automotive fabrication" was $54,009, with a range of $21,000 to $98,000 (R. 532). Branski also submitted job postings for a metal fabricator at a hot rod and custom car shop paying $20 to $30 per hour (R. 533), a craftsman / technician job at a classic car restoration shop paying $800 to $1,600 per week (R. 534), a metal fabricator job at a custom car shop paying $20 per hour (R. 535), and a custom car fabricator with no salary listed but including Indeed.com's estimate that an estimated salary would be $50,700 to $64,100 (R. 536).

USCIS rejected Branski's evidence regarding an automotive fabricator because he failed to show that an automotive fabricator is akin to a coachbuilder. While Branski calls USCIS's conclusion "nonsense" and argues that "[c]oachbuilders are, by definition, automotive fabricators," he supports this assertion only with a citation to USCIS's decision. (ECF No. 17 at 22.)

Substantively, his argument is fallacious. Even if coachbuilders are automotive fabricators, Branski does not suggest that automotive fabricators are coachbuilders. The distinction is material because, if coachbuilding is a higher skilled subset of automotive

fabricators, comparing coachbuilders to automotive fabricators would be like comparing a neurosurgeon to a broad class of all physicians rather than peer neurosurgeons.

As USCIS noted, it is Branski's burden to prove that his salary is high in relation to others in the field. USCIS reasonably found that Branski failed to sustain his burden to show what others in the field earned, much less that his salary was high in comparison. Because its decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the court cannot upset USCIS's decision as to this criterion.

### 4. Conclusion

USCIS reasonably found that Branski failed to prove that he "performed in a leading or critical role for organizations or establishments that have a distinguished reputation," 8 C.F.R. § 204.5(h)(3)(viii), or that he "commanded a high salary or other significantly high remuneration for services, in relation to others in the field," 8 C.F.R. § 204.5(h)(2)(ix).

However, USCIS did not adequately explain its conclusion that Branski failed to identify "[p]ublished material about [him] in professional or major trade publications or other major media, relating to [his] work in the field for which classification is sought," 8 C.F.R. § 204.5(h)(3)(iii). USCIS appears to have improperly reject purported expert opinions simply because they were not "objective" and failed to consider proffered

evidence of the publications' circulation. Accordingly, remand it necessary to permit USCIS is reassess whether Branski satisfies the 8 C.F.R. § 204.5(h)(3)(iii) criterion.

If USCIS finds that Branski satisfies three of the section 204.5(h)(3) criteria, it then must proceed to the second step of the analysis and assess whether he has demonstrated both that he has "a level of expertise indicating that [he] is one of that small percentage who have risen to the very top of the field of endeavor," 8 C.F.R. § 204.5(h)(2), and that he "has sustained national or international acclaim and that his … achievements have been recognized in the field of expertise," 8 C.F.R. § 204.5(h)(3). *Kazarian*, 596 F.3d at 1119-20; *Amin*, 24 F.4th at 395.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for summary judgment is **granted in part and denied in part** as set forth in this decision.

**IT IS FURTHER ORDERED** that the defendants' cross-motion for summary judgment is **granted in part and denied in part** as set forth in this decision.

This action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of November, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge